**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Animal Welfare Institute<br>900 Pennsylvania Ave., SE<br>Washington, D.C. 20003<br><br>Plaintiff<br><br>v.<br><br>United States Department of Agriculture;<br>Thomas Vilsack, in his official capacity as<br>Secretary, United States Department of Agriculture;<br>Food Safety and Inspection Service;<br>Alfred V. Almanza, in his official capacity as<br>Acting Administrator of the Food Safety and<br>Inspection Service<br>1400 Independence Ave., SW<br>Washington, D.C. 20250<br><br>Defendants | ) | Civ. No. |

**COMPLAINT**

**INTRODUCTION**

1. This case involves the unexplained failure of the Defendants to respond to a request for a rulemaking to update regulations governing the humane treatment of animals at government-inspected slaughter establishments. Plaintiff Animal Welfare Institute brings this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 551-559, 701-706 ("APA"), to require the Food Safety and Inspection Service ("FSIS") of the United States Department of Agriculture ("USDA") to render a final decision on Plaintiff's May 2013 citizen rulemaking petition ("Petition"). Based on the Plaintiff's careful and detailed study

of hundreds of recent violations of existing regulations, the Petition seeks FSIS rulemaking to amend Humane Methods of Slaughter Act ("HMSA") regulations to require that all slaughter establishments take a systematic approach to animal welfare to prevent unnecessary cruelty and suffering.

2. Congress enacted the HMSA in 1958, and incorporated it into the Federal Meat Inspection Act ("FMIA") in 1978. In order to prevent needless suffering, the law requires slaughter establishments to slaughter and handle animals in a humane manner, and provides clear authority to the USDA to write regulations implementing the law. In 1979, the USDA promulgated HMSA regulations in an attempt to address humane handling and slaughter. Since then, there have been private advancements in the humane slaughter of livestock, a greater understanding of the suffering of livestock at slaughter, and the development and wide recognition of further techniques to reduce animal suffering at slaughter. Nevertheless, the USDA has not made substantive changes to its HMSA regulations.

3. This failure has resulted in repeated violation of the HMSA. Prior to filing its Petition, AWI reviewed 1,047 government inspection reports of HMSA regulatory violations from 2007 through 2012. AWI estimates that half of all HMSA violations could be prevented if FSIS grants Plaintiff's petition. Since the Petition was submitted, approximately 2,000 regulatory violations occurred at government-inspected plants that may have been prevented by adoption of the changes requested in the Petition.

4. AWI's review of these reports identified the most common causes of humane slaughter violations. In its Petition, AWI analyzed these causes and proposed specific improvements to the HMSA regulations that are consistent with the HMSA statutory mandate, intended to remedy these continuing violations.

5. FSIS has yet to respond to Plaintiff's Petition or to commence any action that would terminate further review of AWI's request for new requirements in the HMSA regulations. FSIS's unreasonable delay of over three years in responding to a straightforward rulemaking request violates the APA.

6. AWI thus files this Complaint against the USDA, USDA Secretary Thomas Vilsack, FSIS, and Alfred V. Almanza, its Acting Administrator (collectively "Defendants"), seeking a declaratory judgment that the Defendants have violated the APA and injunctive relief to compel Defendants to respond substantively to Plaintiff's Petition.

## JURISDICTION AND VENUE

7. This lawsuit is brought pursuant to the APA, 5 U.S.C. §§ 551-559, 701-706. Plaintiff seeks judicial review under the APA, 5 U.S.C. § 706(1).

8. This Court has subject matter jurisdiction over the claim for relief set forth herein pursuant to 28 U.S.C. § 1331 (2006) (actions arising under the laws of the United States), 28 U.S.C. § 1346 (2006) (action against the United States), and 28 U.S.C. §§ 2201-02 (2006) (power to issue declaratory judgments in cases of actual controversy).

9. Venue properly lies in this Court under 28 U.S.C. § 1391(e)(1). (Supp. 2011).

## PARTIES

10. Plaintiff Animal Welfare Institute (AWI) is a nonprofit organization founded in 1951 with the primary purpose of alleviating the suffering of nonhuman animals. A main area of AWI's advocacy focuses on large-scale industrial animal farms, which raise pigs, cows, chickens, and other animals for slaughter. Since its inception, AWI has pursued both legislative and judicial initiatives to end cruel practices committed against animals, as well

as to provide education on the extent of those practices and what people can do to combat animal cruelty.

11. AWI lobbied heavily for the passage of the HMSA in 1958 and for its incorporation into the FMIA in 1978, as well as for other federal animal protection statutes such as the Animal Welfare Act, the Endangered Species Act, and the Marine Mammal Protection Act.

12. In addition to lobbying for passage of important animal protection legislation, AWI routinely advocates for regulations to effectively implement and enforce such legislation.

13. AWI continuously monitors enforcement of the HMSA, as well as the promulgation of regulations by the USDA and state departments of agriculture.

14. AWI's interests in the well-being of livestock and in protecting them from cruel and inhumane practices are injured by FSIS' failure to respond to its Petition for rulemaking. While the agency's pursuit of the rulemaking would cure this injury by diminishing harm to such animals, even a denial of AWI's Petition for rulemaking would cure the injury by allowing AWI to focus its resources in an alternate manner to effect the changes it desires.

15. Defendant USDA is a department of the United States government, charged with overseeing federal laws related to farming, agriculture, and food.

16. Defendant Thomas Vilsack is the United States Secretary of Agriculture, responsible for overseeing the agencies under the USDA, including FSIS.

17. Defendant FSIS is an agency under the USDA and is responsible for ensuring the safety of the nation's supply of meat, poultry, and egg products. FSIS is responsible for inspecting slaughter plants to ensure that they comply with the requirements of the HMSA.

18. Defendant Alfred V. Almanza is the Acting Administrator of FSIS.

## STATUTORY BACKGROUND

19. Congress passed the HMSA in 1958 with the stated purpose of "establish[ing] the use of humane methods of slaughter of livestock as a policy of the United States, and for other purposes." Pub. L. 85–765, § 1, Aug. 27, 1958, 72 Stat. 862.

20. Congress found that the use of humane methods of slaughter "prevents needless suffering; results in safer and better working conditions for persons engaged in the slaughtering industry; brings about improvements of products and economies in slaughtering operations; and produces other benefits for producers, processors, and consumers which tend to expedite an orderly flow of livestock and livestock products in interstate and foreign commerce." 7 U.S.C. § 1901.

21. The Act covers both the slaughter process itself and the handling of animals in connection with slaughter. 7 U.S.C. § 1902.

22. In 1978, Congress incorporated the HMSA into the FMIA to provide the USDA with further enforcement authority. As it currently stands, the HMSA requires that livestock be "rendered insensible to pain by a single blow or gunshot or an electrical, chemical or other means that is rapid and effective," with an exception for ritual slaughter. 7 U.S.C. § 1901.

23. The HMSA and the FMIA give the USDA the authority to promulgate regulations to effectuate the goals of the statutes. *See* 7 U.S.C. §§ 1904(b), 1907(b); 21 U.S.C. § 601 (making numerous references to the Secretary of the USDA's ability to promulgate regulations under the Act).

24. The 1979 HMSA regulations cover livestock pens, driveways, and ramps; handling of livestock; stunning by chemical (carbon dioxide), mechanical (captive bolt, gunshot), and

electrical means; and tagging of equipment, alleyways, pens, or compartments to prevent inhumane slaughter or handling in connection with slaughter. 9 C.F.R. Part 313.

25. The HMSA regulations are enforced by FSIS and state departments of agriculture in the 27 states that operate their own inspection programs for meat sold intrastate.

26. Since the initial promulgation of HMSA regulations nearly 40 years ago, FSIS has amended the rules only twice. Neither of these amendments were made for the purpose of decreasing animal suffering.

27. The first amendment was enacted in 1994 in response to a petition by the Danish and Swedish Meat Institute, and it permitted the use of carbon dioxide to cause death in pigs. 59 Fed. Reg. 21,640 (Apr. 26, 1994).

28. Second, in 2004, FSIS amended the regulations to prohibit the use of captive bolt stunners that inject compressed air into cattle craniums as a measure to help prevent bovine spongiform encephalopathy (commonly known as Mad Cow Disease). 69 Fed. Reg. 1,891 (Jan. 12, 2004).

29. FSIS has not proposed any amendments to the HMSA since 2004. During just the past six years, however, other agencies under the USDA have amended, or proposed amending, the regulations of statutes that they administer for the purpose of preventing animal suffering.

30. Since 2010, the Animal and Plant Health Inspection Service (APHIS) has proposed amending regulations related to the Animal Welfare Act three times and has proposed amendments to the Horse Protection Act regulations twice. Additionally, APHIS has made major revisions to the regulations governing the welfare of farm animals exported from the United States.

31. The Agricultural Marketing Service (AMS) has proposed amending the regulations related to farm animal welfare under the Organic Food Production Act three times since 2010.

32. Additionally, FSIS recently granted a rulemaking petition to allow the use of inert gases to slaughter pigs. This petition was granted within a year of the petition's submission. This petition was submitted more than two years after Plaintiff's Petition.

## FACTUAL BACKGROUND

### The Humane Slaughter of Livestock

33. In 2008, public outcry and the largest beef recall in the history of the United States occurred after multiple instances of egregious cruelty to non-ambulatory cattle at the Westland-Hallmark Meat Packing Co., in Chino, California, were captured on videotape by animal protection advocates. In 2012, when another video revealed non-ambulatory cattle being handled inhumanely at Central Valley Meat in Hanford, California, the federal government and McDonald's Corporation responded by suspending purchases of beef from the plant.

34. Despite these reactions, however, instances of inhumane slaughter continue. Approximately half of all HMSA violations could be prevented through the granting of the AWI petition. These violations include (1) making cuts on or skinning conscious animals, (2) excessive beating or prodding of animals, (3) driving animals off semi-trailers over a drop off, (4) running equipment over conscious animals, (5) stunning animals and then allowing them to regain consciousness, (6) taking multiple attempts to stun animals, and (7) leaving disabled animals exposed to adverse climate conditions. Such egregious violations happen on a regular basis, but can, at least in part, be prevented by the implementation of appropriate regulations.

35. After reviewing more than 1,000 HMSA violations from 2007 through 2012, AWI categorized the types of violations and identified their common causes. AWI found that the causes were: (1) lack of employee training in humane handling, (2) use of improper stunning devices, (3) improper placement of stunning devices, often in connection with inadequate restraint, (4) lack of back-up stunning equipment, and (5) lack of routine testing and maintenance of stunning equipment.

36. To reduce these problems, AWI proposed commonsense and easily implemented regulatory amendments in its Petition. The amendments proposed in the Petition are as follows: (1) Every establishment shall develop a written, systematic humane handling plan in order to address the risks the statute seeks to mitigate. (2) Establishment personnel shall be trained in humane handling of animals prior to first coming in contact with any animal, and at regular intervals thereafter. (3) Establishments shall maintain at least one backup stunning device that is checked and cleaned at least weekly, and the routine maintenance recorded. (4) Chemical, mechanical, and electrical stunning equipment shall be routinely tested and maintained. (5) If more than one stunning method is used at an establishment, guidelines shall be posted in the stunning area regarding the appropriate stunning device with regard to kind, breed, size, age, and sex of the animal to produce the desired results. (6) Guidelines shall be posted in the stunning area regarding the proper placement of mechanical stunning devices for all species of animals slaughtered at the establishment.

37. Amendments to the HMSA regulations are necessary, as they will better ensure compliance with statutory requirements. Since the passage of the HMSA, tens of thousands of incidents of inhumane handling at slaughter have been documented by food safety inspection personnel, and countless other incidents have gone either unobserved or unreported. In

2015 alone, the HMSA governed the treatment of approximately 147 million animals at 2,718 inspected slaughter establishments in the United States. More humane treatment would not only benefit the livestock, but consumers as well. Numerous scientific studies have illustrated the connection between humane handling at slaughter and the subsequent quality and safety of the meat produced.

**Plaintiff's Rulemaking Petition and Agency Response**

38. Although FSIS acknowledged receipt of Plaintiff's May 2013 Petition on November 25, 2013, Plaintiff has yet to receive a substantive response from the agency, three years later. This inaction on the part of the Defendants runs contrary to their statutory mandate to promulgate rules and regulations to address the humane slaughter of livestock and prevent needless suffering. Despite compelling evidence that animals continue to unnecessarily suffer due to remediable practices, the Defendants refuse to further regulate these practices.

39. Each day that the Defendants continue their unreasonable delay of the Plaintiff's Petition, more animals endure needless, egregious suffering, and their handlers continue to lack the training and protocols necessary to ensure safer work conditions. Thus, this delay runs counter to the HMSA statutory mandate.

40. The agency's delay is particularly unreasonable because it granted another citizen petition submitted in November 2015, which requested that the agency allow the use of inert gasses such as nitrogen and argon as a humane method of slaughter for swine. While this petition's scope is narrower than the Plaintiff's Petition, it concerns a substantively and morally similar matter.

41. Defendants' failure to address the inhumane slaughter of animals in government-inspected plants in any systemic or meaningful way stands in derogation of their obligation under the HMSA to police against the mistreatment and needless suffering of livestock.

**FSIS and the USDA Have Unreasonably Delayed in Responding to Plaintiff's Petition**

42. Despite the APA's requirement that an agency issue a "prompt" response to a petition, the Defendants have, for over three years, failed to initiate rulemaking procedures or otherwise issue a substantive response to Plaintiff's Petition. This delay can only be described as unreasonable. It has been decades since any meaningful regulations have been adopted, and the straightforward nature of the request at hand and ample evidence provided to support it make this a particularly uncontroversial petition to consider.

43. If an agency fails to respond to a petition within a "reasonable time," courts will direct the agency to act by either proceeding with a rulemaking, or issuing a denial. 5 U.S.C. § 555(b) (providing that "within a reasonable time, each agency shall proceed to conclude a matter presented to it").

44. Because of the Defendants' ongoing delay, a court-ordered deadline is necessary to ensure that the USDA responds to the Petition within a specified time frame.

## CAUSE OF ACTION

45. Plaintiffs repeat and incorporate herein by reference each of the allegations set forth above.

46. The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-706, provides for judicial review to compel agency action if it is unreasonably delayed (§ 706(1)), and grants judicial review to a "person suffering legal wrong because of agency action, or adversely

affected or aggrieved by agency action." *Id.* at § 702. "Agency action" includes the "failure to act." *Id.* at § 551(13).

47. When unreasonable delay occurs, courts may "compel agency action unlawfully withheld or unreasonably delayed," and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at § 706(1); 706(2)(A).

48. The APA also requires that agencies give "prompt notice" if they deny a petition and, "[e]xcept in affirming a prior denial or when the denial is self-explanatory," give "a brief statement of the grounds for denial." *Id.* at § 555(e).

49. Defendants have a duty to respond timely to Plaintiff's Petition. *See* 5 U.S.C. § 555(b).

50. Despite this statutorily imposed mandate, the Defendants have failed to initiate rulemaking procedures or otherwise respond to Plaintiff's Petition. This three-year delay is beyond the bounds of ordinary, reasonable response time for an agency under the APA.

51. Defendants' violation is ongoing. Their failure to properly regulate the slaughter of livestock at government-inspected plants allows egregious suffering to continue every day.

52. Due to the Defendants' failure to respond within a reasonable time, this Court should compel the agencies to act. 5 U.S.C. § 706(1).

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

1. A declaratory judgment that the Defendants' inaction in response to the Plaintiff's Petition constitutes "unreasonable delay" in violation of the Administrative Procedure Act;

2. An order enjoining Defendants from further delay in responding substantively to the Plaintiff's Petition regarding the inhumane handling of livestock at slaughter and requiring a response within 60 days; and

3. Any other relief this court finds just and proper.

Respectfully submitted,

Jeffrey Gutman (DC Bar No. 416954)
Professor of Clinical Law
Anna Luft (LS No. 14807)
Patrick Tierney (LS No. 14800)
Student Attorneys
The George Washington University Law School
Public Justice Advocacy Clinic
2000 G Street, NW
Washington D.C. 20052
(202) 994- 7463 (phone)
(202) 994- 4693 (fax)
jgutman@law.gwu.edu

Dated: December 13, 2016